## UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

| | |
|---|---|
| SHANNON GAVEL, on Behalf of Herself and on Behalf of All Others Similarly Situated, § § § § Plaintiff(s), § § v. § § ATWELLS REALTY CORP., THE ONE, INC., Both d/b/a CLUB DESIRE, MADELINE DISANTO, GERARD DISANTO II, § § § § § § Defendants. § | Civil No. 1:19-cv-00433-MSM-LDA |

### JOINT MOTION TO APPROVE FLSA SETTLEMENT AGREEMENT AND FOR DISMISSAL WITH PREJUDICE (WITH MEMORANDUM INCORPORATED)

NOW COME Plaintiff Shannon Gavel, on behalf of herself and the two Opt-In Plaintiffs to this case ("Plaintiffs") and Defendants Atwells Realty Corp., The One, Inc., both d/b/a Club Desire, Madeline Disanto, and Gerard Disanto II (collectively "Defendants") (collectively with Plaintiff, the "Parties")  by and through their undersigned counsel, respectfully request that this Court enter an Order approving the settlement reached in this case that is memorialized in the Settlement Agreement and Release (the "Settlement Agreement"), appended hereto as Exhibit "1."

As more fully set forth in the accompanying Memorandum of Law, the settlement among the Parties satisfies all factors required for approval, in that it was reached through arms-length negotiations and falls within the range of possible approval. Therefore, the Parties hereby request that this Court grant this Motion and enter the Proposed Order approving the Settlement Agreement and dismissing this action with prejudice.

Dated: December 1, 2020

## MEMORANDUM OF LAW

Plaintiff and Defendants respectfully submit this Memorandum of Law in support of their Joint Motion to Approve the Settlement Agreement. The Court's approval of the Settlement Agreement is requested by the Parties here as this case includes claims for unpaid wages under the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 ("FLSA"), among other claims. The Parties respectfully submit that the settlement as memorialized in the Settlement Agreement is fair and reasonable, satisfying the criteria for approval under section 216(b) of the FLSA.

### I.  INTRODUCTION

This case concerns an action under the Fair Labor Standards Act ("FLSA"). Plaintiff filed her original complaint on August 14, 2019. (Doc. No. 1). Plaintiff filed suit alleging she was denied minimum wages and owed reimbursement of certain fees and monies paid to Defendants while working at Club Desire. Plaintiff filed this lawsuit as an FLSA collective action pursuant to 29 U.S.C. § 216(b) on behalf of all persons who were or are employed by Defendants as exotic dancers during the three years prior to filing the lawsuit.

On October 1, 2019, Defendants moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 12(b)(1) alleging a failure to state a claim and lack of subject matter jurisdiction in order to compel arbitration. (Doc. Nos. 12-1 and 13-1). After briefing on the issues closed initially with Defendants' Reply filed on October 22, 2019 (Doc. No. 16), Plaintiff filed a Motion for Leave to file a Supplemental Response due to new authority from the First Circuit announced. (*See* Doc. Nos. 20-23). The Court ultimately granted Plaintiff's Motion for Leave on September 21, 2020, via text order. The Court then notified the Parties of a hearing on the Defendants' Motions to Dismiss and Compel Arbitration set for October 8, 2020.

In the background of the filings back and forth between the Parties, they commenced

2

discussion of possible settlement around December 2019. With the Court's suggestion, the Parties even explored the option of attending a mediation by the ADR Administrator. However, the Parties ultimately decided to continue with informal settlement talks. Around January 2020, Plaintiff's counsel notified Defendants' counsel of two other clients that sought to join the lawsuit and be considered in any settlement reached. From then on, the Parties exchanged information regarding the claims, evidence, and dates of employment for the two additional potential opt-in plaintiffs.

When the Parties seemed to reach an impasse around June 2020, Plaintiff's counsel requested that the case proceed with discovery. On July 2, 2020, Plaintiff filed a Notice of Consent to Join the action on behalf of two Opt-In Plaintiffs: Yessenia Hernandez and Daimarie Pabon Molina. The Parties conducted their Rule 26(f) conference around September 29, 2020, and again discussed the potential for early resolution for all three Plaintiffs. Based on the conference and gathered information on all three Plaintiffs, Plaintiff submitted a revised settlement demand to re-start negotiations around October 23, 2020.

The Parties engaged in settlement negotiations and successfully reached a settlement agreement around October 30, 2020. The Parties filed a Notice of Settlement with the Court the same day. (Doc. No. 25). The Parties now respectfully request that the Court grant their Joint Motion to Approve their FLSA Settlement Agreement and to Dismiss the case With Prejudice for the reasons stated herein. The final terms of the settlement are reflected in the attached Exhibit "1."

## II.    ARGUMENTS AND AUTHORITIES

It is well established that courts favor settlements of lawsuits over continued litigation. *See, e.g., E.E.O.C. v. Astra U.S.A., Inc.*, 94 F.3d 738, 744 (1st Cir. 1996) ("We do not doubt that public policy strongly favors encouraging voluntary settlement"); Newberg on Class Actions § 11:41 ("The compromise of complex litigation is encouraged by the courts and favored by public

policy").

"Ordinarily there [is] no need" for the Court to approve the settlement of a "dispute between employer and employees [because] people may resolve their own affairs, and an accord and satisfaction bars a later suit." *Walton v. United Consumer Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986). However, this case involves claims for unpaid overtime wages brought pursuant to the FLSA, which is "designed to prevent consenting adults from transacting about minimum wages and overtime pay." *Id.* "Courts therefore have refused to enforce wholly private settlements." *Id.* (*citing Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352 (11th Cir. 1982)).

Claims for unpaid overtime and minimum wage under the FLSA cannot be waived or settled. *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 706 (1945). The two exceptions to this rule are 1) that the Secretary of Labor can supervise the payment of back wages or 2) that the employer and employee may present the proposed settlement to a district court for approval. *See* 29 U.S.C. § 215(b); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982).

A court may approve an FLSA settlement if it is "a fair and reasonable resolution of a bona fide dispute over FLSA provisions," *Lynn's Food Stores*, 679 F.2d at 1355; *D.A. Schulte, Inc. v. Gangi,* 328 U.S. 113, n. 8 (1946); *Lynn's Food Stores, Inc.*, 679 F.2d at 1354-55; *Jarrard v. Se. Shipbuilding Corp*., 163 F.2d 960,961 (5th Cir. 1947). If a settlement in an FLSA suit reflects "a reasonable compromise over issues," such as FLSA coverage or computation of back wages that are "actually in dispute," the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores, Inc.*, 679 F.2d at 1354.

"In determining whether a settlement is fair and reasonable, a court considers the totality of the circumstances, encompassing a range of factors including: (1) the plaintiff's range of

4

possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arms-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion." *Matheis v. NYPS*, No. 13CV6682-LTS-DCF, 2016 WL 519089, at *1 (SD.N.Y. Feb. 4, 2016) (internal quotation marks and citation omitted).

Here, the Parties agree the settlement is fair and represents a reasonable compromise of the disputed issues in this case and considerations discussed herein.

### A. A "bona fide dispute" regarding Plaintiffs' entitlement to owed wages exists in this case.

As stated above, the Court must first determine whether a "bona fide dispute" exists regarding Plaintiff's entitlement to compensation under the FLSA. Such a "bona fide dispute" exists where the parties disagree regarding the factual allegations underlying a Plaintiff's FLSA claim and whether the Defendants violated the FLSA.

In this case, Defendants have raised a "bona fide dispute" as to several aspects of the Plaintiffs' claims. First, and foremost, the Parties disagree on where Plaintiffs' should be allowed to pursue their claims. Defendants have been adamant that the case belongs before an arbitrator based on a clause of a contract signed by the Named Plaintiff. Plaintiff steadfastly disagrees that she delegated authority to arbitration to decide (1) if there is a delegation clause in the contract, and (2) if the contract she signed is even enforceable. Even if the Parties had gotten a ruling on the Defendants' Motions to Dismiss and Compel Arbitration, the Defendants were prepared to file an appeal to the First Circuit Court of Appeals if the ruling did not go their way. Alternatively, if the ruling had come down in the Defendants' favor, the Plaintiffs would have been forced to essentially

start back at the beginning in a new forum and incur more costs and expend time re-litigating the case in three separate arbitrations.

Next, the Parties disagree over whether the Plaintiffs were employees with rights under the FLSA. Defendants assert that Plaintiffs were never employees, but rather were independent contractors with no rights to wages or protections under the FLSA. Had this matter not settled, the Parties would have submitted this dispute for resolution at summary judgment.

Further, even if Plaintiffs were found to be employees, the Parties disagree fundamentally as to the number of hours and shifts Plaintiffs worked during their work relationship with Defendants. Specifically, Defendants claim Plaintiff Gavel only worked one or two days maximum. Plaintiff Gavel claims to have worked substantially more time. Moreover, there remain outstanding issues as to the number of house fees Plaintiffs paid, the amount of said fees, and whether Defendants would apply for the good faith exception to liquidated damages.

These disputes would have been submitted to a final finder of fact and all Parties recognized the substantial risk that potential liability fluctuated substantially depending on these issues.

The Parties' Settlement Agreement was achieved during arms-length negotiations among the Parties, conducted by experienced counsel. Moreover, the Settlement Agreement serves to resolve claims by Plaintiffs subject to "bona fide disputes" by Defendants as to the underlying propriety of the claims as well as the amount sought. As such, the Settlement Agreement is consistent with the aims and purposes of the FLSA. Accordingly, for these reasons and as more fully set forth below, the Parties request that the Court approve the Settlement Agreement in this case.

**B.      The terms of the settlement provide for substantial compensation for the claims raised in the lawsuit.**

The recovery reached in the Settlement Agreement is significant given that the Parties disagreed over the merits of the case. The Settlement Agreement resolves all of the Plaintiffs' individual claims against Defendants in this case, including their claims for unpaid wages and failure to pay wages under the FLSA. As set forth in the Settlement Agreement, the total settlement amount will cover: (a) Plaintiffs' claim for liquidated and other compensatory damages for their claims under the FLSA, and (b) Plaintiffs' Counsel's attorneys' fees and costs.

Plaintiffs, who are former exotic dancers, worked at the Defendants' establishment from 2015 to 2019 at various points in time for various lengths of time. Plaintiffs allege they are owed the following before liquidated damages:

| Plaintiff | Weeks worked within 2-year SOL period | Alleged Damages (including confiscated earnings and paid fees) |
|---|---|---|
| Plaintiff Gavel | 1 week | $233.00 |
| Opt-in Plaintiff Hernandez | 34 weeks | $8,824.80 |
| Opt-in Plaintiff Pabon Molina | 10 weeks | $2,118.00 |

Defendants deny all liability on the claims brought by Plaintiffs. Defendants submit that Plaintiffs are not owed any wages under federal, state, or common law. Defendants investigated the claimed dates of employment and evidence for each Plaintiff for the entire statutory period. Plaintiff's counsel then analyzed the data and/ or information provided to determine the amounts that counsel believes are owed to each Plaintiff. The Parties agree that the proportional division of the settlement based on the amount of time each Plaintiff worked is an equitable distribution of the settlement fund. *See* Exhibit "1."

### i. Incentive Award

Courts have routinely approved incentive payments in class settlements as a way of compensating class representatives for lending their names, reputations, and efforts to the prosecution of litigation on behalf of others, and to promote class settlements while encouraging Plaintiff to act as "private attorneys general" in the enforcement of state and federal law.

A 2006 study of incentive awards during 1993–2002 (374 cases) found that the median incentive payment then was $4,357, and the average $15,992. Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study,* 53 UCLA L.Rev. 1303, 1308 (2006).[1] *Scovil v. FedEx Ground Package System, Inc.*, 1:10-CV-515-DBH, 2014 WL 1057079, at *6 (D. Me. Mar. 14, 2014). The 2006 study, however, recognized that awards in employment discrimination cases are higher. *Id.* at 1308. As Judge Hornby of the District of Maine has recognized, awards in employment cases were generally higher than in other types of cases and recent awards averaged around $15,000 but could reach $30,000 and higher. *Scovil v. FedEx Ground Package System, Inc.*, 1:10-CV-515-DBH, 2014 WL 1057079, at *6 (D. Me. Mar. 14, 2014); *Massiah v. MetroPlus Health Plan, Inc.,* No. 11–cv–05669(BMC), 2012 WL 5874655, *8 (E.D.N.Y. Nov. 20, 2012) (approving service awards of $5,000 each to two plaintiffs); *Hopson v. Hanesbrands Inc.,* No. CV–08–0844, 2009 WL 928133, *10 (N.D. Cal. April 3,

---

[1] *See also* Thomas E. Willging, Laural L. Hooper, & Robert J. Niemic, Fed. Judicial Ctr., Empirical Study of Class Actions in Four Federal District Courts: Final Report to the Advisory Committee on Civil Rules (1996); Sherrie R. Savett, et al., Consumer Class Actions: Class Certification Issues, Including Ethical Considerations and Counsel Fees and Incentive Award Payments to Named Plaintiffs, 936 PLI/Corp. 321 at 340 (1996) (citing 52 cases involving incentive awards payments and noting that the normal range of such awards is $1,000 to $5,000). In the Federal Judicial Center study of four district courts—the Eastern District of Pennsylvania, the Southern District of Florida, the Northern District of Illinois, and the Northern District of California—the authors found that incentive awards were granted in 26, 46, 40, and 37 percent of the cases, respectively. *Id.* The median amounts of all awards to class representatives ranged from $7,500 in two districts to $17,000 in the Northern District of California. *Id.* at 26. The median award per representative in three courts was under $3,000 and was $7,560 in the Northern District of California. *Id.* at 8.

2009) (approving $5,000 payment to plaintiff in wage and hour case). The reason commonly given for the higher awards in these cases is the fear and risk of retaliation and embarrassment in the workplace, on top of the time and administrative commitment that is commonly shared in all cases, employment or not.

As part of the settlement, the Parties agreed to an Incentive Award for Shannon Gavel. Otherwise known as a "service payment" or "incentive award," this amount is in addition to her pro rata settlement share. In light of the efforts resulting in a settlement on behalf of the other two Plaintiffs in the case, the valuable contributions Ms. Gavel made throughout the litigation, particularly in its initial phases, and the significant risk to her reputation and future employment, the Plaintiff submits that the incentive award is reasonable. Here, the Parties agree to an incentive award for Named Plaintiff Gavel in the amount of $4,214.13 which brings her total recovery in this case to $4,500. The Parties agree that this is a fair amount in light of the length of the litigation and her cooperation and assistance to Plaintiff's counsel throughout.

**C.     The settlement is fair and reasonable in light of the uncertainty of the outcome.**

Counsel for both Parties believe in the merits of their clients' positions, but nonetheless recognize that the litigation of the claims in this case involves uncertainty in terms of duration, cost, and result. Moreover, even if Plaintiff succeeded on the merits of some or all the claims, the amount of recovery is uncertain and is an additional point of disagreement between the Parties. Given the uncertainty surrounding continued litigation and a possible trial in this case, the certainty offered by the Settlement Agreement favors the Court's approval in this case.

To avoid the uncertainty and costs of litigation, Defendants have agreed to pay Plaintiffs the amounts set forth in the Settlement Agreement. The settling Parties have agreed that, in exchange for this payment, Plaintiffs' claims will be dismissed with prejudice. The Parties have already signed the Settlement Agreement. There is no evidence, or even claim, of fraud or

collusion. To the contrary, the settlement agreement is a by-product of settlement negotiations by experienced and competent counsel. Both parties assert that the settlement is fair and reasonable in light of the uncertainty of the outcome of litigation and the real possibility of elongated proceedings depending on how the court would have ruled on the Defendants' Motions to Dismiss and Compel Arbitration.

**D.      The attorneys' fees sought are fair and reasonable.**

Additionally, the amount for attorneys' fees are fair and reasonable. The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). The Parties agree that the amount paid under the Settlement Agreement to cover Plaintiffs' attorneys' fees and costs were reasonable and necessary.

To determine the reasonableness of fees, the court used the lodestar method. *Davis v. Footbridge Engr. Services, LLC*, 09CV11133-NG, 2011 WL 3678928, at *1 (D. Mass. Aug. 22, 2011). The lodestar method multiplies the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Gay Officers Action League v. Puerto Rico,* 247 F.3d 288, 295 (1st Cir.2001) (quoting *Hensley v. Eckerhard,* 461 U.S. 424, 433 (1983)). The court may then adjust upwards or downwards depending on the circumstances. *Rogers v. Motta,* 655 F.Supp. 39, 43 (D.Mass.1986). Typically, a court may adjust downwards if there is a finding of unreasonable expenditures such as duplicative or excessive work and overstaffing. *Id.* The court may also depart upwards due to the complexity of issues and the quality of representation. *Blum v. Stenson,* 465 U.S. 886, 887 (1984).

In this case, Plaintiff's counsel bill at rates ranging from $300 to $450 per hour. Plaintiff's counsel's staff including paralegals and law clerks bill at rates ranging from $70 to $125 per hour.

Collectively, counsel and staff (lead and local) have billed over 146 hours in the case which totals approximately $43,359.24. Plaintiff's counsel have recoverable litigation costs in the amount of $1,276.55.

Although the settlement fee and cost payment by Defendants calculates to an amount less than Plaintiff's counsel's lodestar, in the interest of a settlement, Plaintiff's counsel accepted the lesser sum. Plaintiff's counsel's agreement to accept $10,000 as a reduced fee is reasonable and in line with the work performed and the recovery received in this case. Plaintiff's counsel agreed to accept payment by Defendants of attorney's fees and costs in the combined total amount of $11,276.55.

**E.     The settlement should be approved by the Court because it is fair and reasonable.**

The settlement reached by the Parties, as memorialized in the Settlement Agreement, is fair and reasonable to both Plaintiff and Defendants. Plaintiff's counsel has significant experience litigating employment claims, including claims under the FLSA for employee misclassification, unpaid overtime, and hours worked. The Settlement Agreement was achieved only after vigorous litigation as well as exhaustive arms-length and good faith negotiations between the Parties which culminated in the Settlement being reached to resolve all three Plaintiffs' claims in this case. Prior to and during negotiation of the Settlement Agreement, the Parties participated in frank and informal discovery and investigation of the claims. Thus, the factual and legal issues in this case were thoroughly explored by counsel for both Parties, and all aspects of the dispute are well-understood by both Plaintiffs and Defendants. *See Rolland v. Cellucci*, 191 F.R.D. 3, 6 (D. Mass. 2000) (holding parties seeking settlement approval obtain "a strong initial presumption that the compromise is fair and reasonable by establishing that the settlement was reached after arms-

length negotiations, that the proponents' attorneys have experience in similar cases, [and] that there has been sufficient discovery to enable counsel to act intelligently").

The settlement here was negotiated by attorneys who have been vigorously prosecuting and/or defending this and similar claims for many years. Both sides have had considerable experience in prosecuting, defending, and settling federal and state wage and hour claims previously, and, in this case, were particularly well informed as to the facts and circumstances of the litigation.

After the Parties reached an agreement on the settlement, the Parties engaged in extensive negotiations concerning the specific terms of the settlement and the scope of the release. The settlement documents were ultimately approved and executed by the Parties are the result of very comprehensive discussions, as well as exhaustive and hard-fought negotiations.

All that said, there can be no question that this Settlement Agreement represents fair value for the Plaintiffs. Each Plaintiff will receive back wages and liquidated damages under federal law without the risk or expense of a trial. Indeed, the amounts recovered under the settlement are fair on an individual basis.

### III.  CONCLUSION

The terms of the settlement have been approved by Plaintiff, Plaintiff's counsel, Defendants, and Defendants' Counsel. The settlement was negotiated at arms-length. The Parties entered into the Settlement Agreement voluntarily and knowingly. The Parties agree that the terms of the Settlement Agreement are reasonable, fair and just, and they settle all claims in this lawsuit. Accordingly, Plaintiff requests that the Court approve the FLSA settlement.

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an order approving the Parties' Settlement Agreement and Dismiss the case With Prejudice. A proposed

order is attached for the Court's consideration.

Respectfully submitted,

| FOR PLAINTIFFS: | FOR DEFENDANTS: |
|---|---|
| Hodges & Foty, LLP | Nicholson & Associates |

/s/ *Tina E. Gutierrez*
David W. Hodges (admitted pro hac vice)
State Bar No. 00796765
dhodges@hftrialfirm.com
Tina Gutierrez (admitted pro hac vice)
State Bar No. 24116467
tgutierrez@hftrialfirm.com
4409 Montrose Blvd., Suite 200
Houston, TX 77006
Telephone: 713-523-0001
Fax: 713-523-1116

ATTORNEYS-IN-CHARGE FOR
PLAINTIFF AND CLASS MEMBERS

AND

LOCAL COUNSEL:
Thomas J. Enright
Rhode Island Bar No. 17356
tom@enrightlawoffice.com
ENRIGHT LAW LLC
696 Reservoir Ave
Cranston, RI 02910
Telephone: (401) 526-2620
Facsimile: (401) 457-7117

*/s/ Richard W. Nicholson*
Richard W. Nicholson, Esq #6245
9 Thurber Blvd, Suite D
Smithfield, RI 02917
Tel (401) 453-5055
Fax (401) 453-5056
E-mail: rich@rilawcpa.com

And

August E. Bigos, Esq #9869
Of Counsel, Nicholson & Associates
9 Thurber Blvd, Suite D
Smithfield, RI 02917
Tel (401) 453-5055
Fax (401) 453-5056
Email: abigos@rilawcpa.com

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I certify that on December 1, 2020, a true and correct copy of the foregoing instrument was served via the Court's electronic case filing service.

/s/ Tina E. Gutierrez
Tina E. Gutierrez
